*MONCURE, J.,
delivered the opinion of the court:
The court is of opinion, that the contract of the 16th of January 1852, between Nisewander and the appellant, though made when the former was under age, and when that fact was known to the appellant, was not a void contract, but only voidable, and subject to be affirmed or disaffirmed by the former, after his arrival at age. “The tendency of the modern decisions (says Chancellor Kent) is in favor of the reasonableness and policy of a very liberal extension of the rule, that the acts and contracts of infants should be deemed voidable only, and subject to their election, when they become of age, either to affirm or disavow them.” 2 Kent Com. 235. The authorities on this subject are fully collected in the valuable notes of Hare & Wallace, appended to the case of Tucker, &c. v. Moreland, in 1 American Leading Cases, edition of 1857, p. 224-267. And from the numerous decisions which have been had in this country, the annotators deduce the following definite rule, as one that is subject to no exceptions. “The only contract binding on an infant, is the implied contract for necessaries : the only act which he is under a legal incapacity to perform, is the appointment of an attorney; all other acts and contracts, executed or executory, are voidable or confirmable by him at his election.” Id. 244. It is not material that the title bond in this case is in a penal sum; though it has been said that a bond of an infant with a penalty is void. Coke Hit. 172 a; recognized as being still the law by Bayly, J., in 3 Maulé & Sel. 482. The penalty of the bond is a mere matter of form, the substance of the contract being the condition, on which may be maintained an action of covenant at law or a suit for specific performance in equity. See also 3 Rob. Pr. (new) 221-228.
The court is further of opinion, that the said contract was disaffirmed by the contract of the 8th of ^November 1853, between Nisewander and Wohlford, made after the former arrived at age. There is no evidence, nor even pretence, of any affirmance of the former contract by Nise-wander after he arrived at age and before he entered into the latter, which was but eight days after his arrival at age. On the contrary, he persisted, during that period, in declaring that he would not confirm the former contract. Then, the question is, Did not the latter amount to a disaffirmance of the former? A voidable act of an infant may be avoided by different means, according to the nature of the act; but, without undertaking to enumerate them, it is sufficient for the purposes of this case to say, that such an act may certainly be avoided *841 by him, after he becomes of age, by an act of the same nature and dignity. Thus a feoffment may be avoided by a feoffment; a deed of bargain and sale, by a deed of bargain and sale; a title bond, by a title bond, &c. ; the two acts in these cases being of the same nature and dignity. It is not necessary, in order to produce that effect, that the latter act should expressly disaffirm the former. It is enough that the two acts are inconsistent with each other; in which case the former is disaffirmed by plain and necessary implication. The case of Frost v. Wolveston, 1 Strange’s R. 94, seems to have proceeded on this principle. There, an infant covenanted to levy a fine by a certain time to certain uses; and before he came of age he levied the fine, and by another deed, made at full age, he declared it to be to other uses: the court held that the last deed should be the one to lead the uses. So also did the cases of Jackson v. Carpenter, 11 John. R. 539; Jackson v. Burchin, 14 Id. 124; and Tucker v. Moreland, 10 Peters’ R. 58.
In these cases, deeds of bargain and sale were avoided by deeds of the same nature to other bargainees. In the last of them, Judge Story said the *first two “are directly in point, and proceed upon principles which are in perfect coincidence with the common law, and are entirely satisfactory.” In these cases, the first grantee was not in actual possession when the second deed was executed, but the land was either vacant, or the grantor remained in possession. If there be an adverse possession, then, it is said, in those states where one out of possession cannot sell, there should be an entry by the grantor in order to avoid the first deed by another. 1 Am. Read. Cas. 257, and the cases cited. But no entry is necessary in those states in which one out of possession of real estate can sell his interest therein. 1 Parsons on Cent. 273. That is the case in this state, under the Code, ch. 116, § 4, 5, p. 500; 'which provides, “that all real estate shall, as regards the conveyance of the immediate freehold thereof, be deemed to lie in grant as well as in livery;” and that “any interest in or claim to real estate may be disposed of by deed or will.” Carrington v. Goddin, 13 Gratt. 537. Butin this case, though the first vendee appears to have been in possession when the second title bond was executed, such possession was not adverse to the vendor, but in subordination to the title which still remained in him, and which would have been conveyed by him independently of the statute, and without any actual entry. In any view of the case, therefore, the contract with Wohlford was a disaffirmance of the contract with the appellant.
The court is further of opinion, that the effect of such disaffirmance, was to render the first mentioned contract void; to extinguish any interest in law or equity the appellant may have acquired under it; and to entitle Nisewauder, or his vendee Wohlford in his name, to recover possession of the land in an action at law, and hold it free from anj’ equity of the appellant. When a voidable contract of am infant is dis-affirmed *by him, it is made void ab initio by relation, and the parties revert to the same situation as if the contract had not been made. 1 Am. Lead. Cas. 259; Boyden v. Buyden, &c., 9 Metc. R. 519. 521. If the contract was one of sale by the infant, he becomes reinvested with his title to the property, and may demand and recover it, not only of the vendee, but oí any other person who may have it in possession. The right of an infant to avoid his contract is an absolute and paramount rig'ht, superior to all equities of other persons, and may therefore be exercised against purchasers from the vendee. 1 Am. Lead. Cas. 258; citing Myers, &c. v. Sanders’ heirs, 7 Dana’s R. 506, 521, and Hill v. Anderson, 5 Smedes & Marsh. R. 216, 224. He vfho deals with an infant deals at his peril, and subject to this right of the infant to disaffirm and avoid the contract. This is the case, even though he deal in ignorance of the infancy, and on the fraudulent representation of the infant that he is of full age. Van Winckle v. Ketcham, 3 Caines’ Cas. 323; Conroe v. Birdsaill, 1 John. Cas. 127; and other cases cited in 1 Am. Lead. Cas. 249. A fortiori, it is the case where, as here, the dealing is with full knowledge on the part of the adult of the infancy of the other contracting party. While the effect of avoiding the contract of sale by an infant is, on the one hand, to entitle him to demand and recover the property sold, so it is, on the other hand, to entitle the other contracting party to demand and recover the consideration received by the infant, or so much of it as may then remain in his hands in kind. Indeed, if the infant, after arriving at age, and before any act of disaffirmance by him, alien any part of the consideration, or exercise any unequivocal act of ownership over it, or retain it in his hands in kind for an unreasonable length of time, he may thereby affirm the contract and render it absolutely binding. Id. 255. But if he has, during infancy, wasted, sold *or otherwise ceased to possess the consideration, and has none of it in his hands in kind on his arrival at age, he is not liable therefor, and may recover possession of the property sold by him (at least if the contract of sale be executory merely on his part) without accounting for the consideration received. “The true rule,” as stated in Story on Cont. $ 42, “seems to be, that when articles are furnished to the infant which do not come within the definition of necessaries, and which are consumed or parted with; or when money is lent which is expended by the infant; the other party has no remedy to recover an equivalent for the goods or money; the specific consideration given by him being parted with, or not being capable of return. But when the specific consideration, whatever it be, exists, and remains in the hands of the infant at the time of the disaffirmance of the con *842 tract, and is capable of return, the infant is bound to give it up, and he is treated as a trustee of the other party, if the contract be made originally in good faith. The ground of such a distinction is, that in the first case the goods or money cannot be returned; and to make the infant liable therefor in damages, merely because they had been used -by him, would be to deprive him of his privilege of affirming or avoiding his contract.” See also Boody v. McKenney, 23 Maine R. 517.
In the case of an executed sale by an infant, it has been held that if he disaffirm the sale and seek to recover back the article sold, he must restore the purchase money or other consideration; Smith v. Evans, 5 Humph. R. 70; Badger v. Phinney, 15 Mass. R. 359, 363; and if he go into chancery to set aside his conveyance, he must offer in his bill to restore the purchase money; Hillyer v. Bennett, 3 Edw. Ch. R. 222. Without expressing any opinion upon this question, it is sufficient for the purposes of this case to say, that no case of an executory contract of sale by an in- . fant ’“'has been found, in which the infant, disaffirming the contract after his arrival at age, has been held accountable for the consideration received and spent by him during his infancy; but all the authorities on the subject seem to be the other way. If the infant in any such case has delivered possession of land contracted to be sold by him, he has an unconditional right to recover it back in an action at law; and a court of equity* will not restrain him from doing so, nor impose terms upon the exercise of his right. Such was the decision of the court in Brawner & wife v. Franklin, &c., 4 Gill’s R. 463. Dorsey, J., in delivering the opinion of the court, said, ‘‘Establish the doctrine now contended for, and what is the result? Why, that the whole policy of the law as to infantile incompetency to sell, waste and dispose of their property and estates, is frustrated.” ‘‘An infant may sell his patrimonial estate, prodigally waste the purchase money in extravagance, gambling and dissipation ; and if, when arrived at years of maturity and discretion, he disaffirm the contract, and sue at law for the recovery of his property, a court of equity will, by injunction, arrest the arm of the law, and say to him, Before you shall further assert your claim to your estate, you must repay to the purchaser ail the money you have received from him.” To such a doctrine the court refused to subscribe, and, we think, rightly so.
The court is further of opinion, that the appellant having no equity in regard to the land when he obtained the deed of the 18th of November 1853, and having obtained it with full knowledge of the equity of Wohl-ford, can derive no benefit from the said deed, but holds the legal title acquired under it in trust for the heirs of Wohlford, and may be compelled by a court of equity to convey said title to them. A purchaser for valuable consideration without notice of a prior equity, and having the legal estate, is entitled to apriority in equity as well as at law, according to the maxim, that where equities are equal, the law shall prevail. He is a great ■ favorite of a court of equity, and has been protected to such an extent as to be allowed to take advantage of a deed which he stole out of a window by means of a ladder, and of a deed obtained by a third person without consideration and by fraud. Plagg’s Case, cited in 1 Vern. R. 52; Harcourt v. Knowel, cited in 2 Vern. R. 159; and Culpeper’s Case, cited in 2 Freem. R. 124. “These, however (it has been well said), were extreme cases, showing indeed how partial equity is to a purchaser, but carrying the doctrine of protection further than it would be at the present day.” 2 White & Tudor’s Eq. Cas. 6, notes to Basset v. Notworthy; 2 Sugd. Vend. 1020. And it has been held that a purchaser “shall not protect himself by taking a conveyance from a trustee after he had notice of the trust; for by taking a conveyance with notice of the trust, he himself becomes the trustee, and must not, to get a plank to save himself, be guilty of a breach of trust.” Saunders v. Dehew, 2 Vern. R. 271. If, therefore, the appellant could be regarded as a bona fide purchaser when he obtained the deed from Nisewander, he could derive no protection from that deed, which was obtained from a mere trustee of the legal title for Wohlford, and with full knowledge on the part of the appellant of the existence of the trust. Indeed, if he had then been a bona fide purchaser, he would not have needed the deed for his protection against Wohlford, who, in that case, would have been a purchaser with notice of his prior equity. But the appellant cannot be regarded as a purchaser at that time. He had received no conveyance, and paid only a part of the purchase money. His purchase was never more than voidable, and had been avoided; and he ceased to have any equity, in regard to the land; but
Nisewander was left free to dispose of it as *if he never had sold it to the appellant. So that Wohlford’s purchase, though made with notice of the prior sale to the appellant, was entirely unaffected thereby', the same having been disaffirmed and avoided. And the appellant, having obtained the deed with full notice that the person from whom he obtained it was a mere trustee of the legal title for Wohlford, became himself a mere trustee of that title, and bound therefore to convey it to Wohl-ford’s heirs.
The court is further of opinion, that any claim which the appellant may' have on account of payments made under the original contract with him, or as a consideration for the execution of the said deed, is a personal claim against Nisewander, and cannot be enforced in this suit. It has been already shown that the appellant has no interest in or claim to the land itself. Nor has he any in or to the purchase money, if any, due by Wohlford. If he *843 has, he must have derived it from the deed. But that is a conveyance of the land, and not an assignment of the purchase money. It is adversary to the sale to Wohlford, and not in subordination to it. A claim founded thereon is in conflict with the specific execution of Wohlford’s purchase, to which he is entitled, and which is the purpose of thus suit. Such claim, there fore, cannot be enforced in this suit.
The court is further of opinion, that it sufficiently appears from the recital contained in the decree appealed from, that the cause had been duly revived in the name of the heirs of Wohlford; Craig v. Sebrell, 9 Gratt. 131; but at all events, the appellant has no right to complain of any irregularity in that respect, the said decree being in the name and in favor of said heirs, and they being parties to and defending this appeal.
The court is therefore of opinion, that there is no error in the said decree to the prejudice of the appellant. *But the court is further of opinion, that as it does not appear that the whole purchase money due by Wohlford had been actually paid when the said decree was rendered, though it had then become payable ; and as the said land was subject to a lien for so much of the said purchase money as may then have remained unpaid; the said decree should have been without prejudice to such lien, and to any proceedings for the enforcement thereof which the said Nfisewander or his assigns might be advised to institute ; and that the said decree should be amended in that respect, and as amended affirmed.
Decree amended and affirmed.